IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HOLIDAY HOSPITALITY FRANCHISING, LLC, | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| v. | § § | |
| EAGLE LANDINGS OF JAX, LLC and GREGORY D. MORRIS, | § § § | |
| Defendants. | § § | |

## COMPLAINT

Plaintiff Holiday Hospitality Franchising, LLC ("HHFL" or "Licensor"), brings this Complaint for Declaratory Judgment ("Complaint") against Defendants Eagle Landings of Jax, LLC ("Eagle Landings" or "Licensee") and Gregory D. Morris ("Morris" or "Guarantor") (collectively "Defendants") and states and alleges as follows:

1.

HHFL is forced to bring this lawsuit for a declaratory judgment that it has not materially breached its hotel License Agreement as Eagle Landings has alleged and that Eagle Landings does not have any right to unilaterally terminate that contract as it recently purported to do. Eagle Landings agreed to operate a Crowne Plaza® hotel

at the Jacksonville, Florida airport for a term running through October 31, 2047. Indeed, HHFL paid Eagle Landings $450,000 in 2023 to extend the term to that date. But less than two years later, and with no notice whatsoever, Eagle Landings purported to unilaterally terminate the License Agreement based on false allegations of non-existent breaches by HHFL, allegations which Eagle Landings had never previously asserted and for which it provided no factual support. Despite HHFL immediately informing Eagle Landings that it had no right under the License Agreement to unilaterally terminate, Eagle Landings is persisting in its position that the contract is terminated apparently so it can convert the hotel to a competing brand owned by Wyndham. HHFL therefore is forced to file this action seeking a declaratory judgment that it is not in material breach of the License Agreement and that Eagle Landings is not entitled to terminate the Agreement on that basis.

## PARTIES, JURISDICTION, AND VENUE

2.

HHFL is a limited liability company organized under the laws of the State of Delaware, with its principal office located in DeKalb County, Georgia. Accordingly, for purposes of determining diversity jurisdiction, HHFL is a citizen of Delaware and Georgia.

2

3.

Upon information and belief, Defendant Morris is a resident and citizen of Florida and may be personally served at 516 S Sea Lake Ln, Ponte Vedra Beach, FL 32082

4.

Eagle Landings is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 516 S Sea Lake Lane, Jacksonville, Fl 32082. HHFL alleges the following upon information and belief based on information provided to HHFL by Eagle Landings: Eagle Landings has one member, JAXAP, LLC. JAXAP, LLC in turn has one member, which is JAX HOTEL, LLC. The managing member of JAX HOTEL, LLC is Golden Eagle Hotel Investments, whose sole member is Gregory Morris. Mr. Morris is a resident and citizen of Florida. Upon information and belief formed after a reasonable investigation into the ownership of JAX HOTEL, LLC, HHFL reasonably believes that other members of JAX HOTEL, LLC are residents and citizens of Florida and/or South Carolina. On July 22, 2026, a representative of HHFL spoke with counsel known to represent Eagle Landings and inquired to confirm whether Eagle Landings has any members who are citizens of Georgia or Delaware. HHFL has not received any information that Eagle Landings has any members in those States. Based on its

inquiry and reasonable investigation, HHFL alleges upon information and belief that Eagle Landings is a citizen of Florida and South Carolina.

5.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because HHFL is a citizen of the States of Georgia and Delaware, Defendants are citizens of the States of Florida and South Carolina, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.

This Court has personal jurisdiction over Defendants because, in the License Agreement, Eagle Landings "expressly and irrevocably submit[ted] itself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of DeKalb County, Georgia for the purpose of any and all disputes." Similarly, in the Guaranty (as defined below), the Guarantor "consent[ed] and submit[ted], . . . to the personal jurisdiction and venue of any courts (federal, superior, or state) situated in the County of DeKalb, State of Georgia."

7.

Additionally, this Court has personal jurisdiction over Defendants pursuant to O.C.G.A. § 9-10-91 because, in entering into and performing under the License Agreement and the Guaranty (as defined below), Defendants transacted business in

Georgia and benefited from the services of HHFL, which is domiciled in Georgia. Specifically, Defendants reached out and sought to enter long-term agreements with HHFL, an entity they knew was headquartered in Atlanta, Georgia (located in the Northern District of Georgia), through which Eagle Landings became a licensee of HHFL, and Guarantor guaranteed Eagle Landings' obligations under the License Agreement.

8.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

**FACTUAL BACKGROUND**

9.

HHFL and certain of its affiliates develop and operate (among other things) the Crowne Plaza® hotel system, which includes without limitation, the Crowne Plaza® trademark and intellectual property, as well as related services and standards (collectively, the "System"). The System is designed to provide distinctive, high-quality hotel services to the public under the well-established Crowne Plaza® brand. HHFL licenses the Crowne Plaza® System to licensees in exchange for the payment of royalties and other fees. HHFL, along with certain of its affiliates, does business as IHG Hotels & Resorts.

10.

HHFL entered into that certain Crowne Plaza® Change of Ownership License Agreement with Eagle Landings, dated October 30, 2017 (together with any amendments, modifications, and extensions thereof or thereto, the "License Agreement"), for the operation of a Crowne Plaza® brand hotel located at 14670 Duval Road, Jacksonville, FL, 32218 (the "Hotel"). Pursuant to the agreement, HHFL agreed to license to Eagle Landings the use of the System (as the term is defined in the License Agreement) in the operation of the Hotel. A true and correct copy of the License Agreement with attachments is attached hereto as **Exhibit A** and is incorporated herein.

11.

The License Agreement originally was set to expire on January 12, 2030.

12.

On May 8, 2019, HHFL and Eagle Landings entered an addendum to the License Agreement (the "First Addendum"). As an accommodation to Eagle Landings, HHFL (among other things) extended the expiration date to October 31, 2037, and in consideration of Eagle Landings' execution of the Addendum, HHFL agreed to pay Eagle Landings $450,000 within ten business days after the PIP Completion Date (as defined in Attachment B of the License Agreement). A true

and correct copy of the First Addendum with attachments is attached hereto as **Exhibit B** and is incorporated herein.

13.

On October 27, 2023, HHFL and Eagle Landings entered a second addendum to the License Agreement (the "Second Addendum"). As an accommodation to Eagle Landings, HHFL extended the expiration date, for a second time, to October 31, 2047. In consideration of Eagle Landings' execution of the Second Addendum, HHFL agreed to pay Eagle Landings $1,000,000 in two installments: the first upon execution of the Second Addendum and proof that all FF&E orders had been placed, and the second upon completion of the Work (as defined in Attachment B of the License Agreement). A true and correct copy of the Second Addendum with attachments is attached hereto as **Exhibit C** and is incorporated herein.

14.

On October 17, 2024, HHFL and Eagle Landings entered a third addendum to the License Agreement where HHFL agreed to provide an extension for Eagle Landings to complete the Work and amended the License to modify the payment terms set out in the Second Addendum for the benefit of Licensee (the "Third Addendum"). A true and correct copy of the Third Addendum with attachments is attached hereto as **Exhibit D** and is incorporated herein.

15.

In total, HHFL agreed to pay Eagle Landings $1,000,000—of which HHFL has, to date, already paid $450,000 in connection with the foregoing Addenda to extend the License Agreement.

16.

Paragraph 3.A.(4) of the License Agreement provides that during the term of the License Agreement, Eagle Landings will "operate the Hotel 24 hours a day every day except as otherwise permitted by [HHFL], as such programs may be modified by [HHFL]from time to time."

17.

Paragraph 3.A.(13) of the License Agreement provides that during the term of the License Agreement, Eagle Landings will "promote the Hotel on a local or regional basis subject to [HHFL]'s requirements as to form, content and prior approvals."

18.

Paragraph 3.A.(15) of the License Agreement provides that during the term of the License Agreement, Eagle Landings will "use every reasonable means to encourage use of Crowne Plaza branded facilities everywhere by the public."

19.

Paragraph 3.A.(17) of the License Agreement provides that during the term of the License Agreement, Eagle Landings will "promptly pay to [HHFL]all amounts due [HHFL], its parents, subsidiaries and affiliates as well as royalties or fees, whether or not arising out of this License, or for goods or services purchased by [Eagle Landings] for use of the Hotel."

20.

The License Agreement does not give Eagle Landings any right to terminate the Agreement before the end of the term.

21.

As an inducement to HHFL to execute the License Agreement, Guarantor executed a guaranty, effective as of October 30, 2017. A true and correct copy of the Guaranty is attached hereto as **Exhibit E** and is incorporated herein by reference.

22.

Pursuant to the Guaranty, Guarantor "jointly and severally . . . guarantee[d] that all of [Eagle Landings'] obligations under the [License Agreement] . . . will be punctually paid and performed." Additionally, pursuant to the Guaranty, Guarantor agreed that, "[u]pon default by [Eagle Landings] and notice from [HHFL], the undersigned will immediately make each payment and perform each obligation required of [Eagle Landings] under the License [Agreement]."

23.

Paragraph 14.J of the License Agreement requires Eagle Landings to pay HHFL "all expenses, including reasonable attorney's fees and court costs, incurred by Licensor … to … enforce or defend itself or any rights under this License Agreement…."

24.

Morris agreed in the Guaranty "to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor … to … enforce any rights under this Guaranty or the License…."

25.

The License Agreement and Guaranty each provide that they are governed by Georgia law.

26.

On October 30, 2017, Eagle Landings took over operating the Hotel as a Crown Plaza® pursuant to the License Agreement.

27.

Rather than continuing to perform as required under the long-term License Agreement, Eagle Landings mailed a letter through counsel dated June 30, 2026, purporting to give "formal notice of termination of the [License] Agreement, effective immediately; to wit, June 30, 2026." ("June 30 Letter"). A true and correct

copy of the June 30th Letter is attached hereto as **Exhibit F** and is incorporated herein by reference.

28.

Prior to the June 30 Letter, Eagle Landings had never given written notice to HHFL of any alleged breach of the License Agreement by HHFL.

29.

In the June 30 Letter, Eagle Landings stated that the basis for its purported termination of the License Agreement was "Licensor's repeated failures to properly perform its obligations under the Agreement and its ongoing mismanagement of matters materially affecting the Hotel's operations, performance, and profitability."

30.

Although the June 30 Letter made reference to HHFL's alleged "failures to properly perform its obligations under the [License] Agreement," Eagle Landings did not identify any provision of the Agreement that HHFL allegedly breached or any specific act or omission by HHFL that allegedly breached the License Agreement. Rather, Eagle Landings purported to set out a list of "Licensee's concerns," which include five bullet-point generic allegations devoid of any explanation or other factual support.

31.

Eagle Landings stated in the June 30, 2026 letter that, based on its stated "concerns," it was "elect[ing] to terminate the Agreement effective immediately."

32.

On July 1, 2026, before having seen the June 30 Letter, HHFL was made aware that the Hotel had replaced certain Crowne Plaza® signage with Wyndham signage.

33.

Although HHFL had not yet received the June 30th Letter, on July 1, 2026, HHFL notified Eagle Landings' counsel in writing and via email that HHFL had been made aware the Hotel had installed Wyndham signage and appeared to be in the process of converting to a Wyndham hotel. HHFL further advised that Eagle Landings had no right to prematurely terminate the License Agreement or to cease performing under the Agreement, and that HHFL did not consent to the Hotel exiting the System before the contractual expiration date. HHFL advised Eagle Landings that its purported termination was invalid and that the License Agreement remained in full force and effect. A true and correct copy is attached hereto as **Exhibit G** and is incorporated herein by reference.

34.

On July 9, 2026, HHFL sent a letter to Eagle Landings in which (among other things) HHFL reaffirmed its position that the License Agreement remains in full force and effect and that the June 30, 2026 letter purporting to terminate the License Agreement was invalid. HHFL advised Eagle Landings that it had become aware that the Licensee had installed Wyndham signage, was purporting to operate as a Wyndham-branded hotel, was refusing to honor reservations made with IHG One Rewards points, and was not complying with IHG's One Rewards program, all of which conduct violated the License Agreement. HHFL advised Eagle Landings that it disputed and rejected Licensee's allegations of breach in the June 30, 2026 letter or that any alleged breach (which HHFL disputed) would give Licensee a right to terminate the License Agreement. A true and correct copy of HHFL's July 9, 2026 letter is attached hereto as **Exhibit H** and incorporated by reference.

35.

Eagle Landings has not substantively responded to HHFL's July 1 or July 9 letters or indicated that it intends to comply with its obligations under the License Agreement. To the best of HHFL's knowledge, Eagle Landings is continuing efforts to convert the Hotel to a Wyndham hotel in violation of the License Agreement.

36.

While Eagle Landings' June 30, 2026 letter alleged vague "concerns" regarding HHFL's alleged performance under the License Agreement, the June 30, 2026 letter does not declare that HHFL has materially or totally breached the License Agreement.

37.

In fact, HHFL has substantially performed all its obligations under the License Agreement, and it was not and is not in material or total breach of the Agreement. Thus, Eagle Landings' purported election to terminate the License Agreement is invalid and has no effect.

## COUNT I
### DECLARATORY JUDGMENT (Against Eagle Landings)
### (28 U.S.C. § 2201)

38.

HHFL incorporates the preceding paragraphs as if fully restated herein.

39.

As set forth above, Eagle Landings has taken the position that it has terminated the License Agreement, immediately and unilaterally, due to what it contends are HHFL's failures to properly perform its obligations under the Agreement and

alleged mismanagement of matters materially affecting the Hotel's operations, performance, and profitability.

40.

HHFL disputes that it has failed to perform its obligations under the License Agreement, as alleged by Eagle Landings, and further disputes that Eagle Landings is entitled to terminate the License Agreement on this basis.

41.

Eagle Landings continues to take actions based on its position that the License Agreement is terminated due to HHFL's alleged breach, despite the fact that it has no factual or legal basis to do so.

42.

Based on the foregoing facts, HHFL needs a judicial declaration as to whether the conduct alleged in the June 30th Letter constitutes a breach of the License Agreement, and if so, whether that breach was material.

43.

Thus, there presently exists a justiciable controversy between the parties as to the rights and obligations of HHFL and Defendants under the License Agreement and Guaranty. Under 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

44.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HHFL seeks a declaration that HHFL has not materially or totally breached the License Agreement based on any of the purported "concerns" alleged in the June 30th Letter or as a result of any other act or omission.

45.

HHFL further seeks a declaratory judgment that Eagle Landings' June 30, 2026 letter purporting to unilaterally terminate the License Agreement is invalid and has no effect.

## COUNT II
### ATTORNEYS' FEES (Against All Defendants)

46.

HHFL incorporates the preceding paragraphs as if fully restated herein.

47.

Section 14.J of the License Agreement requires Eagle Landings to pay HHFL's expenses, including reasonable attorneys' fees and court costs, incurred by HHFL to enforce any rights under the License Agreement.

48.

The Guaranty requires Morris to pay HHFL's expenses, including reasonable attorneys' fees and court costs, incurred by HHFL to enforce any rights under the License Agreement.

49.

HHFL has incurred and continues to incur court costs and attorneys' fees to enforce the License Agreement as a result of Eagle Landings' June 30, 2026 letter which purported to "elect[] to terminate" same.

50.

Defendants are in breach of their respective obligations under the License Agreement and Guaranty to pay the expenses, including court costs and attorneys' fees, that they agreed to pay to HHFL pursuant to § 14.J of the License Agreement and pursuant to the Guaranty.

51.

In addition, and alternatively, Defendants have acted in bad faith, been stubbornly litigious, and/or has caused HHFL unnecessary trouble and expense as a result of the June 30, 2026 letter purporting without basis to "elect[] to terminate" the License Agreement and taking steps to convert the Hotel to a Wyndham hotel in violation of the License Agreement.

52.

HHFL is entitled to a judgment requiring Defendants to pay HHFL's expenses that it has incurred and that it will in the future incur in connection with this action, including attorney's fees.

## PRAYER FOR RELIEF

HHFL respectfully requests the following relief:

(a)    A declaratory judgment that:

    i. HHFL has not materially or totally breached the License Agreement for the reasons alleged in the June 30th Letter or as a result of any other act or omission;

    ii. Eagle Landings has no legal or factual basis to unilaterally terminate the License Agreement;

    iii. Eagle Landings' June 30, 2026 letter purporting to unilaterally terminate the License Agreement is invalid and has no effect;

(b)    Judgment in favor of HHFL and against Defendants, jointly and severally, for the attorneys' fees and costs incurred in enforcing the License Agreement and Guaranty, pursuant to the terms of the Agreements and/or O.C.G.A. § 13-6-11; and

(c)    Any such other and further relief which the Court deems just and proper under the circumstances.

18

Respectfully submitted this 23rd day of July, 2026.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Anne Horn Baroody*
Ronald T. Coleman, Jr.
Georgia Bar No. 177655
Anne Horn Baroody
Georgia Bar No. 475569
R. Jannell Granger
Georgia Bar No. 800602

Promenade Tower, 21st Floor
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel.: 404-868-2100
Fax: 404-868-2010
rtcoleman@bradley.com
abaroody@bradley.com
jgranger@bradley.com

*Counsel for Plaintiff Holiday Hospitality Franchising, LLC*